IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREGORY MARSHALL, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. GLR-14-3797 |
| MALL, et al., | : | |
| Defendants. | : | |

### **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants', Associate Psychologist Laura Moulden, Chief Psychologist Bruce Liller, and Counselor Norma Holwager (collectively "Defendants"),[1] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 53). The Motion is ripe for disposition. The Court, having reviewed the Motion and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md 2014). For the reasons outlined below, the Court will grant Defendants' Motion.

### I. BACKGROUND

Plaintiff Gregory Marshall is an inmate currently incarcerated at the North Branch Correctional Institution ("NBCI"). Defendants' are mental health personnel at NBCI. From mid-November until early December 2014, Marshall alleges that he suffered psychotic episodes and did not receive adequate mental treatment from Defendants. (Compl. at 1–2, ECF No. 1). Marshall maintains that he experienced visions of a dead woman, dreams of death, and beliefs that people were plotting to kill him and were listening to his thoughts. (Id. at 2). On November 10, 2014, Marshall had a mental health appointment and denied having suicidal or

---

[1] The Court will direct the Clerk to amend the docket to reflect the full names of Defendants Moulden, Liller, and Holwager.

homicidal thoughts. (ECF No. 8-1 at 000002). Marshall, however, alleges that on November 19, 2014, he tried to kill his cellmate, Richard Parker, by choking him to death. (Compl. at 3). Marshall contends that voices told him to kill Parker because Parker put a computer chip inside his head. (Id.). The day before this alleged incident, on November 18, Marshall was scheduled for a mental health appointment but did not attend. (ECF No. 8-1 at 000002).

In his Supplemental Complaint, Marshall alleges that he had been moved out of the cell he shared with Parker after the incident, but was not provided a single cell, and that he continued to hear voices telling him to kill others. (Supp. Compl. 1–2, ECF No. 10). Marshall contends in his Second Supplemental Complaint that he was not receiving the significant mental health treatment that he needed, that he was seen "maybe" every month by the mental health staff for about fifteen minutes, and that the Celexa medication he was receiving was not working. (Second Supp. Compl. 1–2, ECF No. 12). He maintains that he suffers from schizophrenia and that he has heard voices telling him to kill others. (Id. at 2). Marshall also asserts that on April 23, 2015, he told Defendants Holwager and Mull that he had not received his Celexa medication in over two weeks and Mull told him that his medication was stopped as retaliation for this lawsuit. (Am. Compl. 1–2, ECF No. 19).

Defendant Liller contends that Marshall has not been diagnosed with a psychotic disorder, nor does he demonstrate valid symptoms of psychosis indicating the need for in-patient treatment. (ECF No. 8-1 at 000001). Marshall's diagnoses of record are: Major Depression, Generalized Anxiety Disorder, Depressive Disorder, and Borderline Personality Disorder. (Id. at 000002). With regard to Marshall's alleged attempt to kill his cellmate, Liller contends that on a court trip, Marshall made comments about hurting his cellmate, but later denied he made those statements and willingly returned to his cell with his cellmate. (Id. at 000001). His

2

cellmate also willingly accepted him back in the cell, and there were no reports of incidents between the two. (Id.). Liller contends that between November 1, 2014, and November 23, 2015, Marshall refused to attend fourteen out of his twenty-two scheduled mental health appointments.[2] (Liller Decl. ¶ 5, ECF No. 53-3). Liller asserts that Marshall's medication was discontinued after several warnings that non-attendance would result in discontinuation of medication. (Id. at ¶ 6).

As for Marshall's allegation of retaliation, Defendant Holwager contends that she has no recollection of the incident and does not believe that she was present at the time because it was highly unusual for both her and Defendant Mull to see an inmate at the same time. (ECF No. 53, Ex. 3 at ¶ 7). Marshall's medical records contain no record of any interaction with any medical staff on April 23, 2015. (Id. Ex. 4).

A.  **Procedural History**

Marshall initiated this action on December 5, 2014, raising a 42 U.S.C. § 1983 (2012) claim for failure to provide medical care. (ECF No. 1). He alleged that the prescribed medication (Celexa) was ineffective to treat his schizophrenia and that prison mental health workers refused to provide him with mental health counseling. (Mot. to Am. Compl., ECF No. 5). Marshall requested preliminary injunctive relief ordering his transfer to Patuxent Institution's mental health facility or to Clifton T. Perkins Hospital for an examination to determine his competency and to receive in-patient mental health treatment. (ECF No. 1).

On June 23, 2015, this Court denied Marshall's request for preliminary injunctive relief because he had not been diagnosed with a psychotic disorder and was not exhibiting valid symptoms of psychosis. (ECF No. 23). This Court ordered Defendants to respond to two

---

[2] Liller made these statements in an Affidavit Declaration attached to Defendants' Motion to Dismiss.

allegations in the Complaint: (1) whether prison mental health personnel Mall, Moulden, and Liller denied Marshall treatment from mid-November to early December of 2014; and (2) whether mental health personnel Holwager and Mull refused to treat him on April 23, 2015 in retaliation for this lawsuit. (Id.). The remaining Defendants were dismissed without requiring service of process or a response. (Id.).

On December 1, 2015, Defendants' filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (ECF. No. 53). Defendants argue this suit should be dismissed against them because Marshall failed to exhaust administrative remedies.

## II. DISCUSSION

### A. Standard of Review

When defendants seek dismissal or, in the alternative, summary judgment, the court may use its discretion, under Rule 12(d), to determine whether to consider matters outside the pleadings. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), "[w]hen matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).

The United States Court of Appeals for the Fourth Circuit has outlined two requirements for when a motion to dismiss may be converted to a motion for summary judgment: (1) the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and (2) "the parties 'first [must] be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.,

721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)). When the motion is expressly captioned as a motion to dismiss or in the alternative a motion for summary judgment and matters outside of the pleadings are submitted, the parties are deemed to have sufficient notice that conversion may be granted. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). Here, because the Court will consider matters outside of the pleadings, Defendants' Motion will be treated as one for summary judgment.

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing

Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

**B.      Analysis**

    **1.      Exhaustion**

Defendants argue that Marshall's claims should be dismissed because he failed to exhaust available administrative remedies. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (2012). The PLRA's exhaustion provision requires "prisoners to pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). A court cannot consider a claim that has not been exhausted. See Jones v. Bock, 549 U.S. 199, 219–20 (2007). However, failure to exhaust is an affirmative defense that defendants must prove. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005). Thus, Marshall's complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. See Chase, 286 F.Supp.2d at 528.

Maryland has established the Administrative Remedy Procedure (ARP) for inmates to file complaints associated with the conditions of their incarceration. Blake v. Ross, 787 F.3d

693, 697 (4th Cir. 2015). "The ARP involves a three-step process: the inmate files a request for remedy with the warden, then appeals a denial to the Commissioner of Corrections, and finally appeals any subsequent denial to the Inmate Grievance Office ("IGO")." Id.; Md.Code Regs. § 12.07.01.05(B).

Here, it appears that Marshall did not submit any ARP grievances prior to filing this action. (ECF No. 3, Ex. 5). Thus, he has not complied with the administrative exhaustion requirement and his lawsuit must be dismissed.

### 2. Eighth Amendment - Failure to Provide Medical Care

Even if Marshall had properly exhausted his claim, he would not be entitled to the relief he seeks. Marshall asserts that Defendants failed to provide medical care after he suffered psychotic episodes. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. In the prison context, the Eighth Amendment may be violated upon a showing of "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). To constitute deliberate indifference to a serious medical need, the defendant's actions "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

A prisoner is entitled to medical treatment, including mental health treatment, if a "physician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977).

Claims of medical negligence or disputed questions of medical judgment are not cognizable because they do not involve deliberate indifference.  See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) ("[Q]uestions of medical judgment are not subject to judicial review.").

Here, Marshall was evaluated and did not exhibit homicidal or suicidal thoughts. Marshall had several mental health appointments and was receiving medication that he claimed to be ineffective.  Marshall's disagreement with a prescribed course of treatment offered, however, does not establish deliberate indifference and, therefore, does not state a claim.  Thus the Court will grant Defendants' Motion.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF. No. 53) is GRANTED.  A separate Order follows.

Entered this 22nd day of June, 2016.

      Very truly yours,

      /s/
      _____
      George L. Russell, III
      United States District Judge